IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:19-cv-0072 (WOB-CJS)

WOODY BILYEU, ET AL.                                        PLAINTIFFS

VS.                     MEMORANDUM OPINION AND ORDER

MULTIBAND FIELD SERVICES, ET AL.                            DEFENDANTS

Plaintiffs ask this Court to declare that they can sue Defendants to recoup expenses associated with settling a lawsuit brought by the Department of Labor. Plaintiffs make this request despite a provision in a consent judgment that bars them from suing the non-settling parties and a finding by the Louisiana courts that Defendants are the successors in interest of a non-settling party from the Department of Labor action. Plaintiffs also ask the Court to enjoin the Louisiana courts from interpreting the consent judgment because in Plaintiffs view, this Court retained exclusive jurisdiction to interpret that judgment.

Defendants have moved to dismiss the complaint. (Doc. 8). That motion is **GRANTED** because Plaintiffs' requests for injunctive relief are moot, and their requests for declaratory relief are barred by Louisiana preclusion law and the *Rooker-Feldman* doctrine.

## I. Factual and Procedural Background

This case arises from Plaintiffs' attempt to seek reimbursement for payments they agreed to make to resolve a lawsuit the Department of Labor filed against them. That suit alleged that Plaintiffs breached the fiduciary duties they owed as directors to Directech and Directech Southwest. (Doc. 1 ¶¶ 5, 9; Doc. 8, at 2). The Department of Labor sued Plaintiffs after they allegedly sold stock to Directech and Directech Southwest at inflated prices, resulting in their own financial gain and a sizable financial loss to the employees investing in the Directech and Directech Southwest employee stock ownership program. (Doc. 8). The Department of Labor alleged a conflict of interest because Plaintiffs simultaneously functioned as directors of the companies selling stock and as trustees of the ownership plans purchasing that stock. (Doc. 1 ¶¶ 9, 12-13; Doc. 8, at 2).

Plaintiffs settled with the Department of Labor in exchange for a 5.1-million-dollar payment to the Directech and Directech Southwest employee stock ownership program and a $500,000 payment to the Department of Labor. (Doc. 16-1 ¶ 2). As part of the settlement, Plaintiffs, as settling defendants in the Department of Labor action, signed an agreement that forever barred them from commencing suit against the non-settling defendants for

indemnification.[1] (*Id.* ¶ 13).

In their role as directors, Plaintiffs had signed indemnification agreements with Directech and Directech Southwest. (Doc. 1 ¶¶ 6-7). After those agreements were signed, Directech Holding Company was formed to act as the holding company of Directech and Directech Southwest. (Doc. 1 ¶ 8). Directech Holding assumed the indemnification agreements, and Directech Holding became one of the non-settling defendants that the consent judgment barred Plaintiffs from suing for indemnification. (Doc. 16, at 3).

Shortly after the Department of Labor filed suit, Directech Holding Company agreed to sell all of Directech and Directech

---

[1] The full text of the provision from the Department of Labor's consent judgment reads:

> Settling Defendants, and, as applicable, their agents, representatives, assigns and successors in interest, are permanently and forever barred and enjoined from filing, commencing, instituting, prosecuting, or maintaining, either directly, indirectly, representatively, or in any other capacity any claim against any of the non-settling Defendants arising under state, federal, or common law, however styled, and in any forum, whether for indemnification, contribution, reimbursement, or other monetary relief, where the claim against any of the nonsettling Defendants is based upon, arises out of, relates to the facts, transactions, and occurrences referred to in the Secretary's Complaint, and the claim against any of the non-settling Defendants seeks to recover (i) any amount Settling Defendants have paid pursuant to this Consent Judgment & Order or (ii) any costs, expenses, or attorneys' fees from defending any claim by the Secretary in the Secretary's action.

(Doc. 16-1 ¶ 13).

Southwest to Multiband Corporation. (Doc. 1 ¶ 11). Though Directech Holding survived as a corporate entity for several years after the sale, Multiband, as part of that sale, assumed certain obligations from Directech Holding, including Plaintiffs' indemnification agreements. (*Id.*)

On December 7, 2015, Plaintiffs added Multiband as a defendant in *Bilyeu Bucks, et al. v. Directech Southwest, et al*. (*Id.* ¶ 17). That case was, at the time, in front of the Eighth Judicial District Court, Winn Parish, Louisiana. (*Id.* ¶ 5).

On December 19, 2016, Multiband Field Services and Multiband Corporation (which has since merged into Goodman Networks) sued in this Court requesting a declaration that the consent judgment barred Plaintiffs from asserting indemnity claims against Multiband Corporation and Multiband Field Services and to hold Plaintiffs in contempt due to their ongoing violation of the consent judgment.[2] Because Plaintiffs only wanted to litigate in one venue, Multiband Field Services and Multiband Corporation voluntarily dismissed the prior suit before this Court so the parties could litigate in the Louisiana state courts. (Doc. 29-3).

Plaintiffs' state-court action sought indemnification from Directech, Directech Southwest, and Multiband for the amounts they

---

[2] The prior case number was 2:16-cv-00226-WOB-JGW.

had to pay under the Department of Labor settlement. (Doc. 8, at 4). Because Multiband had assumed control of all the assets and obligations of Directech Holding, Defendants filed an Exception of Res Judicata in the state-court action asserting that Directech, Directech Southwest, and Multiband had assumed Directech Holding's status as a non-settling defendant under the Department of Labor consent judgment. (Doc. 1 ¶¶ 21-22).

Both the Louisiana trial court and the Louisiana Second Circuit Court of Appeals ruled in Defendants' favor and found that the Department of Labor consent judgment barred Plaintiffs' claims against Defendants. (*Id.* ¶¶ 19-22). Multiband, by assuming the obligations of Directech and Directech Southwest, stepped into the shoes of Directech Holding, and, as the Louisiana state courts found, could raise Directech Holding's defense as a non-settling defendant in the Department of Labor lawsuit. (*Id.*)

The complication in this case arises from the fact that Directech Southwest, Directech, and Multiband had ceased to exist before the Exception of Res Judicata was filed. (*Id.* ¶¶ 15-18). Those three corporations had been sold to or had merged into Multiband Field Services and Goodman Networks, meaning that Multiband Field Services and Goodman Networks had become the successors in interest to Directech Southwest, Directech, and Multiband. (*Id.*)

The Louisiana Second Circuit Court of Appeals addressed

Plaintiffs' arguments about the merger of the three named state-court defendants into Multiband Field Services and Goodman Networks and found that while Defendants should have informed the court that the names and statuses of Directech, Directech Southwest, and Multiband had changed, the merger did not affect the state trial court's conclusion that the consent judgment barred Plaintiffs' suit. *Bilyeu Bucks v. Directech Southwest*, 266 So. 3d 467, 474-77 (La. App. 2019).

Further, the Louisiana appellate court affirmed the trial court's decision to deny Plaintiffs' motion to add Multiband field services as a defendant. *Id.* at 477. The appeals court concluded that adding Multiband Field Services would have been a vain and useless act because it was a successor in interest to the named entities and thus protected by the consent judgment. *Id.* at 477-78. The Louisiana appellate court also denied Plaintiffs' application for a rehearing, which notably argued that any interpretation of the Department of Labor's consent judgment was within the exclusive jurisdiction of this Court. (Doc. 1 ¶¶ 21-22).

After losing on appeal, Plaintiffs applied for a supervisory writ with the Louisiana Supreme Court in May 2019. (*Id.* ¶ 23). Plaintiffs then filed this suit on June 4, 2019, and moved to stay the writ proceedings with the Louisiana Supreme Court on June 21, 2019. (Doc. 8, at 5). Recently, on September 6, 2019, the Louisiana

Supreme Court denied Plaintiffs' motion to stay and denied Plaintiffs' writ application. (Doc. 8-2, at 1-2). In response to the denial of the motion to stay and writ application, Plaintiffs filed a motion to reconsider with the Louisiana Supreme Court. (Docs. 16-2, 16-3). The Louisiana Supreme Court denied that motion on November 12, 2019. (Doc. 24-1).

## II. ANALYSIS

While the procedural history and corporate transactions underlying this case are complex, the motion to dismiss raises simple questions. First, the complaint asks this Court to enjoin the proceedings in the Louisiana state courts. (Doc. 1, at 15). But Plaintiffs admit that their request to enjoin the state-court proceedings is moot because there are no on-going state-court proceedings to enjoin. (Doc. 33, at 12-13). The Louisiana Court of Appeals issued a ruling and the Supreme Court of Louisiana denied Plaintiffs' writ request as well as their motion for reconsideration and their motion to stay the writ proceedings.

The complaint also asks this court to declare that the consent judgment does not bar Plaintiffs from suing Directech, Directech Southwest, and Multiband; declare that the consent judgment does not bar a suit against Goodman Networks and Multiband Field Services; and declare that Plaintiffs violated the consent judgment by asking the Louisiana state courts to interpret it. (*Id.* at 14-15).

But Plaintiffs declaratory requests are barred by both principles of issue preclusion and the *Rooker-Feldman* doctrine. The Louisiana state courts found that this Court's prior consent judgment bars a claim for indemnity against Multiband, Directech, and Directech Southwest. Further, the Louisiana Court of Appeals determined that adding a successor in interest, i.e., Multiband Field Services, to the state-court proceedings would be a vain and useless effort because under Louisiana preclusion law, a successor in interest, like Multiband Field Services, is afforded the protections of the consent judgment. Plaintiffs now ask this court to revisit those conclusions and undo the results of the Louisiana litigation.

### A. Plaintiffs' Requests for Declaratory Relief Are Barred by Res Judicata

The Louisiana appellate court's findings mean that Plaintiffs cannot reassert the same indemnification claims every time a merger or sale occurs. Plaintiffs sued Directech, Directech Southwest, and Multiband in Louisiana state court seeking indemnification for expenses related to defending the Department of Labor action. This state-court suit began after Directech Holding sold Directech and Directech Southwest to Multiband.

Though Plaintiffs brought suit to enforce indemnification agreements, the suit was bound to raise the issue of whether the consent judgment's bar on suing non-settling defendants applied to

Directech, Directech Southwest, and Multiband. And when the issue was raised, Plaintiffs never brought their concerns about Louisiana courts interpreting the consent judgment to this Court.

The state trial court found that the protections had passed and concluded that Plaintiffs could not sue Multiband, Directech, or Directech Southwest. The Louisiana Court of Appeals affirmed that finding and also affirmed the trial-court's decision not to allow Plaintiffs to amend the complaint to add Multiband Field Services as a defendant. The appeals court reasoned that it would be futile to do so because Multiband Field Services, as a successor in interest to the entities named in the state-court suit, would also be protected by the consent judgment's bar.

Those conclusions mean that Plaintiffs' requests for declaratory relief are barred by principles of issue preclusion. Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter already litigated and decided. *Heyliger v. State Univ. and Cmty. Coll. Sys. of Texas*, 126 F.3d 849, 852 (6th Cir. 1997). The preclusive effect of a state-court judgment in a subsequent federal lawsuit is generally determined by the full faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." *Marrese v. Am. Acad. of Orthopedic Surgeons*, 470 U.S. 373, 380

(1985).

This Court thus looks to Louisiana preclusion law to determine the extent to which the state court judgment bars subsequent litigation. In Louisiana, "A [final] judgment in favor of either the plaintiff or defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment." La. Stat. Ann. § 13:4231(3). For purposes of res judicata, a final judgment is one that disposes of the merits in whole or in part. La. Stat. Ann. § 13:4231(3), Comments-1990, Comment (d). The preclusive effect of res judicata applies to a nonparty who is a successor in interest of a party or substantially the same as a party. *Bilyeu Bucks*, 266 So. 3d at 474-75; *see also Welch v. Crown Zellerbach Corp.*, 359 So.2d 154, 156 (La. 1978).

The state courts of Louisiana found that the consent judgment barred Plaintiffs from suing Multiband, Directech, and Directech Southwest. Under the full faith and credit clause and Supreme Court precedent, Louisiana law determines that judgment's preclusive effect. And under Louisiana's preclusion law, a judgment's preclusive effects pass on to successors in interest. Plaintiffs admit that Multiband Field services and Goodman Networks are successors in interest to the three defendants sued in Louisiana state court, as the three state-court defendants are now part of Multiband Field Services and Goodman Networks. Thus, Plaintiffs

are precluded from suing them in this Court because they are successors in interest to (or substantially the same as) the parties Plaintiffs sued in Louisiana.

Further, the Louisiana appellate court affirmed the trial court's decision not to allow Plaintiffs to amend their complaint to add Multiband Field Services as a defendant. The state appellate court concluded that joinder of another defendant that could assert the benefit of the bar order was a vain, useless, and meritless act.

The Louisiana Courts have explicitly determined that Plaintiffs cannot sue Multiband, Directech, and Directech Southwest, and Louisiana issue preclusion law extends the effect of the judgment to successors in interest like Multiband Field Services and Goodman Networks. Plaintiffs' requests for declaratory relief are therefore barred by the Louisiana courts' judgments and Louisiana preclusion law.

### B. *Rooker-Feldman* Bars Plaintiffs' Requests for Declaratory Relief

The *Rooker-Feldman* doctrine provides that federal courts do not have jurisdiction over cases brought by a state-court loser complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting the district court's review and rejection of those judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

If the source of the alleged injury is a state-court decision, then the *Rooker-Feldman* doctrine prevents this Court from asserting jurisdiction. *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008).

Plaintiffs have come to this Court, after losing in state court, to seek review of the state court judgment entered against them. The state court found that Directech, Directech Southwest, and Multiband could benefit from the consent judgment's protections and that adding Multiband Field Services as a defendant would be a vain and useless act because it too could assert the Judgment's protections.

Plaintiffs have now asked this Court to declare that Directech, Directech Southwest, Multiband, and Multiband Field Services are not protected by the consent judgment. Such a declaration would contradict the findings of the Louisiana courts. And while the Louisiana Court of Appeals opinion does not mention Goodman Networks, finding that Plaintiffs now can sue Goodman Networks would make no sense and run counter to the Louisiana courts' underlying reasoning and Louisiana law.

Were the issue before the Court to decide anew, the Court would adopt the reasoning of the Louisiana courts and find that the consent judgment bars Plaintiffs' suit against Goodman Networks and Multiband Field Services. Plaintiffs argue in one instance that mergers and purchases confer liability upon the new

corporate entities while arguing that the new corporate entity loses the protection of the consent judgment and becomes liable to indemnify them. Allowing Plaintiffs to continually sue successors in interest like Multiband Field Services and Goodman Networks would, as the Louisiana Court of Appeals put it, violate the terms and spirit of the consent order by permitting Plaintiffs to seek indemnification against parties wronged by Plaintiffs' actions.

### III. Conclusion

Plaintiffs were content to litigate in state court until they lost and were injured by the state-court judgment. They now ask this Court to review the state-court judgment and reverse the harms caused by the state-court litigation. That request is barred by the *Rooker-Feldman* doctrine and Louisiana preclusion law.

Accordingly, it is **ORDERED** that:

Defendants' motion to dismiss (Doc. 8) be **GRANTED** and the case **DISMISSED**. Plaintiffs' motion for a hearing (Doc. 7) is **GRANTED** *nunc pro tunc* and Plaintiffs' motion for a preliminary injunction (Doc. 11) is **DENIED AS MOOT.**

This 13th day of April, 2020.



Signed By:
*William O. Bertelsman*  WOB
United States District Judge